UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Kelly Services, Inc.,

    Plaintiff

v.

A2Z Global Staffing, Inc., et al.,

    Defendants

2:15-cv-01443-JAD-PAL

**Order Granting in Part Motion for Default Judgment**

[ECF No. 58]

Kelly Services, Inc. sues A2Z Global Staffing, Inc. and four individuals, Daven Ricketts and Allan, Alexis, and Susan O'Keefe, claiming that A2Z's failure to perform under a staffing agreement—and the individual defendants' intentional misrepresentations about that performance—cost Kelly nearly $600,000.[1] The claims against Allan O'Keefe have been dismissed without prejudice[2] and defaults have been entered against the remaining defendants.[3] Because A2Z, Daven Ricketts, and Alexis and Susan O'Keefe refuse to defend against Kelly's allegations—despite being served with process[4]—Kelly asks me to enter default judgment against each of them.[5] Having weighed the factors established by the Ninth Circuit in *Eitel v. McCool*, I grant Kelly's motion for default judgment on its claims for breach of contract against A2Z Global Staffing, Inc., and I deny it in all other respects.

**Background**

Kelly is a temporary staffing agency that provides employees to entities who contract with it. For some of its customers, Kelly acts as a "Master Service Provider," whereby Kelly

---

[1] ECF Nos. 1, 31.

[2] ECF No. 48.

[3] ECF Nos. 7, 11, 27.

[4] ECF Nos. 5, 9, 12-1, 13-1.

[5] ECF No. 58.

subcontracts with another temporary staffing agency to supply Kelly's customers with employees. The Secondary Supplier Agreement that Kelly entered into with A2Z on November 9, 2012, is one such subcontract.[6] Under that subcontract, A2Z agreed to supply temporary employees directly to Kelly's customer, Graybar Electric Company, in exchange for payment by Kelly.[7] A2Z's obligations under that subcontract included: (1) obtaining, at its expense, workers' compensation insurance covering the employees that it supplied to Kelly's customers[8]; (2) providing Kelly with a certificate of insurance to that effect[9]; and (3) agreeing to "indemnify, defend, and hold harmless Kelly and [Graybar] . . . against all claims . . . arising out of the performance or failure of performance of this Agreement by [A2Z] or its employees . . . any breach of this Agreement by [A2Z]" with A2Z agreeing "to waive its right to assert any common-law indemnification or contribution claim against Kelly or [Graybar]."[10]

A2Z employee Devon Gadson was placed on assignment at Graybar's location in South Carolina under the subcontract and was allegedly injured while on the job at Graybar on or about August 5, 2014.[11] Gadson filed a workers' compensation claim in South Carolina and named Kelly as a defendant.[12] Kelly made a demand on A2Z to defend and indemnify Kelly and Graybar against Gadson's claims, which A2Z ignored.[13] Kelly subsequently discovered that A2Z had not maintained the workers' compensation insurance required under the subcontract and had

---

[6] ECF No. 1 at ¶ 12.

[7] *Id.* at ¶ 13.

[8] *Id.* at ¶¶ 17–19.

[9] *Id.* at ¶ 18.

[10] *Id.* at ¶ 20.

[11] *Id.* at ¶¶ 21–22.

[12] *Id.* at ¶¶ 23–24.

[13] *Id.* ¶¶ 25–26.

altered the Certificate of Liability Insurance that it had provided to Kelly.[14] The certificate that A2Z gave Kelly stated that A2Z had obtained workers' compensation coverage from September 14, 2013, to September 14, 2014, under policy number WCPAB0023912 with Tower Insurance Company.[15] But the records of the South Carolina Workers' Compensation Commission Coverage and Compliance Department show no workers' compensation coverage for A2Z on those dates.[16]

Kelly then sued A2Z for breach of contract, contractual indemnification, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, intentional misrepresentation, and fraud (by misrepresentation, concealment, and nondisclosure). Kelly also sues the individual defendants for civil conspiracy and fraud by misrepresentation. Despite being served with summons and a copy of the complaint,[17] A2Z, Daven Ricketts, and Alexis and Susan O'Keefe have failed to appear or defend against Kelly's allegations. Kelly obtained a clerk's entry of default against A2Z, Daven Ricketts, and Alexis and Susan Okeefe and then moved for default judgment against them.[18] I denied Kelly's motion for default judgment without prejudice because it failed to address the *Eitel v. McCool* factors.[19] Kelly renewed its motion,[20] which I now address.

## Discussion

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of

---

[14] *Id.* at ¶¶ 28–29.

[15] *Id.* at ¶¶ 32–33.

[16] *Id.* at ¶ 34.

[17] ECF Nos. 5, 9.

[18] ECF No. 24.

[19] ECF No. 57.

[20] ECF No. 58.

default, the complaint's factual allegations are taken as true, except those relating to damages.[21] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[22] The court has the power to require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[23] Whether to grant a motion for default judgment lies within my discretion,[24] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[25]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[26]

**A.   Analyzing the *Eitel* factors**

   ***1.   Possibility of prejudice to Kelly***

The first *Eitel* factor weighs in favor of granting default judgment against the defendants. Kelly pursued its claims to recover the damages that it sustained as a result of the defendants' acts and omissions. The defendants failed to participate in this case despite Kelly's attempts to include them. Kelly made a demand on A2Z that it defend and indemnify Kelly against Gadson's claims and served all of the defendants with process. The defendants' refusals to

---

[21] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[22] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[23] *See* FED. R. CIV. P. 55(b)(2).

[24] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[25] *Eitel*, 782 F.2d at 1471–72.

[26] *Id.* at 1472.

participate compounds Kelly's injuries by requiring it to expend additional resources litigating uncontested issues: that A2Z failed to obtain workers' compensation insurance and provided Kelly a certificate of insurance that had been altered to make it appear that A2Z had obtained the required insurance. Without a judgment against the defendants, Kelly has no other recourse to recover for the damage that it has sustained.

### 2. *Substantive merits and sufficiency of the claims*

The second and third *Eitel* factors require the plaintiff to demonstrate that it has stated a claim on which it may recover.[27] As an initial matter, the subcontract provides that it "will be governed by the internal laws of the State of Michigan, without regard to its conflicts of laws rules."[28] Whether this detail has eluded Kelly is unclear because Kelly cites no law in the sections of its motion addressing the merits of its substantive claims and the sufficiency of its complaint. There is no material difference between the elements of a breach-of-contract claim under Nevada law and Michigan law.[29] However, unlike Nevada, "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing."[30] Because Kelly has not established whether Nevada or Michigan law should apply, I decline to consider its claim for breach of the implied covenant of good faith and fair dealing and I instead focus on Kelly's other claims.[31]

---

[27] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

[28] ECF No. 1-1 at 6.

[29] *Compare Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W. 2d 95, 104 (Mich. 2014) (plaintiff must show "that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach") *with Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (plaintiff must show (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages).

[30] *Fodale v. Waste Management of Mich., Inc.*, 718 N.W. 2d 827, 841 (Mich. App. 2006) (citing *Belle Isle Grill Corp. v. Detroit*, 666 N.W. 2d 271 (Mich. App. 2003)).

[31] Regardless, the damages for breach of the implied covenant would be the same as those awarded for the breach of contract.

The complaint sufficiently sets forth Kelly's breach-of-contract claims against A2Z under Rule 8's liberal pleading standard. Kelly asserts that it entered into a subcontract with A2Z on November 9, 2012.[32] That subcontract required A2Z to obtain workers' compensation insurance to cover the employees that it supplied Kelly's customer Graybar, and to indemnify and defend Kelly in the event that such an employee brought a workers' compensation suit against Kelly or Graybar.[33] Kelly alleges that it performed its obligations under the subcontract.[34] After an A2Z-supplied employee was injured while working at Graybar and brought claims against Kelly and Graybar,[35] Kelly discovered that A2Z had not maintained the workers' compensation required under the subcontract.[36] The Certificate of Liability Insurance that A2Z supplied to Kelly stated that A2Z had obtained workers' compensation coverage from September 14, 2013, to September 14, 2014, under policy number WCPAB0023912 with Tower Insurance Company.[37] But the records of the South Carolina Workers' Compensation Commission Coverage and Compliance Department show no workers' compensation coverage for A2Z on those dates.[38] Kelly alleges that the certificate was altered to appear as if A2Z had obtained the type of insurance it was required to maintain under the subcontract.[39] Kelly made a demand on A2Z to defend and indemnify Kelly and Graybar against the employee's claims, which A2Z ignored.[40] Kelly alleges that it has incurred fees and costs defending against the employee's workers' compensation

---

[32] ECF No. 1 at ¶ 12.

[33] *Id.* at ¶¶ 13–20.

[34] *Id.* at ¶ 42.

[35] *Id.* at ¶¶ 21–24.

[36] *Id.* at ¶¶ 28–34.

[37] *Id.* at ¶¶ 31–33.

[38] *Id.* at ¶ 34.

[39] *Id.* at ¶ 29.

[40] *Id.* at ¶¶ 25–26.

claims as a result.[41]  Accepting these factual allegations as true, as I must in deciding a motion for default judgment, I find that Kelly has pled and proved its claims against A2Z for breach of the subcontract.

The complaint also sufficiently sets forth Kelly's fraud-based claims against A2Z under Rule 8 and 9(b). In order to state a claim for fraud under Nevada law, the plaintiff must allege: "(1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from action upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation."[42]  Kelly alleges that when A2Z provided it with the Certificate of Liability Insurance, it represented that it had obtained workers' compensation coverage as required under the subcontract.[43]  Kelly alleges that this representation was false because the records of the South Carolina Workers' Compensation Commission Coverage and Compliance Department show no workers' compensation coverage for A2Z on those dates.[44]  Kelly alleges that A2Z falsified the Certificate of Liability Insurance that it provided Kelly in order to induce Kelly to enter into the subcontract with A2Z.[45]  Kelly alleges that it justifiably relied on A2Z's representation that it had workers' compensation coverage to Kelly's detriment.[46]  Accepting these factual allegations as true, I find that Kelly has pled and proved its claims for fraud against A2Z.

---

[41] *Id.* at ¶ 46.

[42] *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

[43] ECF No. 1 at ¶¶ 31–33.

[44] *Id.* at ¶ 34.

[45] *Id.* at ¶¶ 68–69.

[46] *Id.* at ¶¶ 70–71.

I further find that Kelly's fraud and breach-of-contract claims against A2Z have substantive merit based on (1) the terms of the subcontract between Kelly and A2Z[47]; (2) the Certificate of Liability Insurance that A2Z provided to Kelly stating that A2Z had a workers' compensation policy covering the relevant time[48]; and (3) the Certificate of Liability Insurance that Kelly later obtained from the South Carolina Workers' Compensation Commission Coverage and Compliance Department showing that A2Z did not have workers' compensation coverage for those dates.[49]

However, I do not find that Kelly's claims for conspiracy and fraud against individual defendants Daven Ricketts and Alexis and Susan O'Keefe are sufficiently alleged. Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud. . . ." "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'"[50] Kelly's complaint does not do this. Although the complaint alleges a separate fraud claim against each defendant, those claims are identical and conclusory. Kelly alleges only that each individual defendant represented that she or he had procured workers' compensation insurance when she or he provided the Certificate of Liability Insurance to Kelly.[51] But Kelly does not allege what each individual defendant's role is within A2Z. And the complaint is devoid of any facts that would inform these defendants—or me— of the allegations surrounding their individual participation in the fraud.

Kelly's conspiracy claim suffers from the same defects. Kelly alleges only that the individual defendants: (1) "committed fraud against [Kelly] by altering the Certificate [of

---

[47] Kelly filed a copy of this agreement with its complaint. ECF No. 1-1.

[48] Kelly filed a copy of this certificate with its complaint. ECF No. 1-2.

[49] Kelly filed a copy of this certificate with its complaint. ECF No. 1-3.

[50] *Swartz v. KPMG, LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

[51] ECF No. 1 at ¶¶ 116, 117, 136, 137, 146, 147.

Liability Insurance] provided to [Kelly][52]; and (2) "agreed to commit fraud against [Kelly] in regard to altering the Certificate [of Liability Insurance] provided to [Kelly]."[53]  The bare assertion of a conspiracy is not sufficient under Rule 9's particularity standard nor does it satisfy Rule 8's liberal pleading standard.[54]  The third *Eitel* factor thus favors default judgment only on Kelly's breach-of-contract and fraud claims against A2Z.  Because Kelly has not sufficiently set forth that it can recover on its other claims, I limit my analysis of the remaining *Eitel* factors to the breach-of-contract and fraud claims against A2Z.

### 3. *Amount at stake*

The third *Eitel* factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct."[55]  Kelly seeks to recover $648,254.20, which is comprised of the $62,972.16 that Kelly has incurred in fees and costs defending against Gadson's workers' compensation claim and the $585,282.04 that Kelly paid to A2Z under the subcontract.  That Kelly has expended these sums is attested to by Thomas Lasky, who gained his knowledge as a result of his employment with Kelly as a "Strategic Service Manager."[56]  I conclude that the amount sought is not unreasonable when balanced against A2Z's conduct.

### 4. *Possibility of dispute*

Under the next *Eitel* factor, I consider the possibility that material facts are disputed. Kelly has adequately alleged breach-of-contract and fraud claims against A2Z.  When A2Z failed to appear, it admitted all of the material facts alleged in Kelly's complaint.  Because those facts

---

[52] *Id.* at ¶ 112.

[53] *Id.* at ¶ 113.

[54] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (providing that "a conclusory allegation of an agreement at some unidentified point does not supply facts adequate to show illegality").

[55] *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citation omitted).

[56] ECF No. 58-1.

are presumed true and A2Z has failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment against A2Z.

### 5. *Possibility of excusable neglect*

The seventh *Eitel* factor requires me to consider whether A2Z's default may have resulted from excusable neglect. After the defendants were served with process, former defendant Allan O'Keefe attempted to answer on behalf of all of them.[57] But as a non-attorney, his answer was legally effective only as to himself. I specifically informed Allan of this problem when I entered an order directing the Clerk of Court to enter default against Alexis and Susan O'Keefe.[58] A2Z and Daven Ricketts had been defaulted by the Clerk of Court prior to my order.[59] Nearly a year has passed and no effort has been made to set aside the default against A2Z. In light of these circumstances, it is unlikely that A2Z's default is the product of excusable neglect.

### 6. *Policy for deciding cases on the merits*

Despite being served with a demand letter and process, A2Z has not responded to Kelly's complaint. Its refusal renders a decision on the merits "impractical, if not impossible."[60] Entry of default judgment is therefore appropriate.

**B.  Character and amount of Kelly's recovery**

Kelly argues that A2Z's contractual breaches entitle it to recover the $62,972.16 that it has incurred in fees and costs defending against Gadson's workers' compensation claim. "It is well established that in contracts cases, compensatory damages 'are awarded to make the aggrieved party whole and . . . should place the plaintiff in the position he would have been in

---

[57] ECF No. 8.

[58] ECF No. 26.

[59] ECF Nos. 7, 11.

[60] *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citing *Columbia Pictures Tele., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)).

had the contract not been breached.'"[61]  Kelly would not have expended that $62,972.16 if A2Z had honored its contractual obligations to obtain workers' compensation insurance and to indemnify and defend Kelly against Gadson's claims.  Thus, $62,972.16 is an appropriate measure of damages for Kelly's breach-of-contract claims against A2Z.

However, the same cannot be said for the sum that Kelly seeks on its fraud claims against A2Z.  Kelly argues that, under *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*[62] and *Butwinick v. Hepner*,[63] it is entitled to restitution on its fraud claims against A2Z in the amount of $585,282.04, which is what Kelly paid to A2Z under the subcontract.  But restitution was awarded in both of the cases that Kelly cites only after the contracts at issue in them had been rescinded.  "A party to a contract may seek rescission of that contract based on fraud in the inducement."[64]  "'Rescission is an equitable remedy [that] totally abrogates a contract and . . . seeks to place the parties in the position they occupied prior to executing the contract.'"[65]  Although Kelly asserts a claim for fraud in the inducement, it does not seek to rescind the subcontract.  Thus, restitution is not the proper measure of damages for Kelly's fraud claims.

Out-of-pocket losses is a measure of damages that is often used in fraud cases.[66]  In the context of misrepresentation, the out-of-pocket measure "is comprised of 'the difference between what [the defrauded party] gave and what he actually received. . . .'"[67]  The benefit-of-the bargain is another method for measuring damages in fraudulent misrepresentation cases.  Under that

---

[61] *Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012) (quoting *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208, 211 (Nev. 1991)).

[62] *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154 (Nev. 1997).

[63] *Butwinick v. Hepner*, 2014 WL 3784111 (Nev. Jul. 30, 2014) (unpublished).

[64] *Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713 (Nev. 2007) (citation omitted).

[65] *Id.* (quoting *Bergstrom v. Estate of DeVoe*, 854 P.2d 860, 861 (Nev. 1993)).

[66] *Davis v. Beling*, 278 P.3d 501, 512 (Nev. 2012).

[67] *Id.* (quoting *Collins v. Burns*, 741 P.2d 819, 822 (Nev. 1987)).

measure, the plaintiff is awarded "the value of what [it] would have if the representations were true, less what [it] had actually received."[68]

The benefit-of-the-bargain metric seems most appropriate under these circumstances, but Kelly has not provided me any evidence from which I can determine the difference in value between what Kelly should have received under the subcontract—A2Z employees who were covered by workers' compensation insurance that had been obtained at A2Z's expense—and what Kelly actually received under the subcontract—A2Z employees who were not covered by workers' compensation insurance that had been obtained at A2Z's expense. Kelly provided nothing more than a declaration from its "Strategic Service Manager" attesting that Kelly paid A2Z $585,282.04 under the subcontract.[69]

Because Kelly's motion is deficient on this and other issues, and this is its second attempt to obtain default judgment, I am concerned that it "seem[s] to view the court's review of default judgment motions as little more than a ministerial act[;] that view is mistaken. The entry of default does not convert this court into a rubber stamp for whatever judgment a plaintiff proposes."[70] I therefore decline to exercise my power to require Kelly to provide additional proof of damages on its fraud claims against A2Z. Instead, I find that A2Z's breaches of the subcontract justify an award in the amount of $62,972.16, and I direct the Clerk of Court to enter judgment in this amount.

### Conclusion

Accordingly, with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that **Kelly's motion for default judgment [ECF No. 58] is GRANTED in part and DENIED in part.** I award Kelly $62,972.16 in monetary damages on its breach-of-contract claims against A2Z Global Staffing, Inc. Kelly's motion is

---

[68] *Randono v. Turk*, 466 P.2d 218, 222–23 (Nev. 1970).

[69] *See* ECF No. 58-1 at 2–3, ¶¶ 7–9.

[70] *See Northwest Adm'rs, Inc. v. Uznov Trucking, LLC*, 2010 WL 933873, at * 1 (W.D. Wash. Mar. 11, 2010).

**DENIED** with prejudice in all other respects.  The Clerk of Court is directed to enter judgment in favor of Kelly Services, Inc. and against A2Z Global Staffing, Inc. in the total amount of $62,972.16 and **CLOSE** this case.

DATED: January 6, 2017.

_____
Jennifer A. Dorsey
United States District Judge